UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

TERRANCE TIPPINS, SHANTELL TIPPINS,
and JOSHUA TIPPINS,

                                   Plaintiffs,

             - against –

THE CITY OF NEW YORK; Police Officer
NICHOLAS DERLETH, Tax No. 952668; Police
Officer THERESA CALLAHAN, Shield No. 19438;
Police Officer SEAN RAFFERTY, Shield No. 17816;
Police Officer ADAM GANNON, Shield No. 14770;
Police Officer JOSEPH BENSON, Shield No. 04862;
Police Officer BRIAN WEBBER, Shield No. 11110;
Police Officer DEANGELO JONES, Shield No.
02393; Captain JOHNNY ORELLANA; and
Police Officers JOHN DOES (whose identities
are unknown but who are known to be police
officers and/or supervisory personnel of the New
York City Police Department); in their
individual and official capacities,

                                 Defendants.

---------------------------------------------------------------- X

**FIRST AMENDED
COMPLAINT**

**15 Civ. No. 5729 (JBW) (VMS)**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1.       This civil rights action is brought in response to the violent acts of police abuse

against Plaintiffs Terrance Tippins, Shantell Tippins, and Joshua Tippins (collectively

"Plaintiffs").  Plaintiffs seek relief for the Defendants' violations of their rights as secured by the

Civil Rights Act, 42 U.S.C § 1983, and their rights secured by the Fourth and Fourteenth

Amendments to the Constitution of the United States, and the laws of the State of New York.

Plaintiffs were deprived of their constitutional and common law rights when the Defendants

invaded the sanctity of Plaintiffs' home without just cause or lawful authority, utilized excessive force and committed unwarranted and malicious assaults on Plaintiffs, unlawfully confined them, and caused the unjustifiable arrest and prosecution of Plaintiffs Terrance Tippins and Joshua Tippins.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and (a)(4) and the aforementioned statutory and constitutional provisions.

3.      Plaintiffs further invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all State law claims for relief which derives from the same nucleus of operative facts and are part of the same cause or controversy that give rise to the federally based claims for relief.

4.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(a), (b) and (c), and because the claims arose and Plaintiffs reside in this district.

## JURY DEMAND

5.      Plaintiffs demand a trial by jury in this action on each and every one of their claims.

## NOTICE OF CLAIM

6.      Plaintiffs timely filed Notices of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiffs' claims against Defendant City of New York.

7.      The City assigned a claim number to Plaintiffs' claims, and Plaintiffs were subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on January 8, 2015.

8.      To date, no answer has been received by Plaintiffs and no compensation has been offered by Defendant City of New York in response to this claim.

9.      This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## PARTIES

10.      Plaintiffs TERRANCE TIPPINS, SHANTELL TIPPINS, and JOSHUA TIPPINS, are all African-American residents of Queens County in the City and State of New York.

11.      Defendant CITY OF NEW YORK ("CITY"), is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the New York City Police Department ("NYPD").

12.      Defendants New York City Police Officers NICHOLAS DERLETH (Tax Registration No. 952668); THERESA CALLAHAN (Shield No. 19438); SEAN RAFFERTY (Shield No. 17816); BRIAN WEBBER (Shield No. 11110); ADAM GANNON (Shield No. 14770); JOSEPH BENSON (Shield No. 04852); DEANGELO JONES (Shield No. 02393); and Police Captain JOHNNY ORELLANA, are and/or were at all times relevant herein, officers, employees, and agents of the New York City Police Department ("NYPD").

13.     Defendant Police Officers JOHN DOES ("DOES") are and/or were at all times relevant herein, officers, employees, and agents of the NYPD, a municipal agency of the City. Officer Does are being sued in their individual and official capacities.

14.     Defendants DERLETH, CALLAHAN, RAFFERTY, WEBBER, GANNON, JONES, ORELLANA, and DOES are herein referred to collectively as the "Individual Defendants."

15.     The individual defendants are being sued in their individual and official capacities.

16.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

17.     The individual defendants were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

**STATEMENT OF FACTS**

18.     Plaintiffs reside at 109-32 143rd Street in Jamaica, New York.

19.     On the afternoon of July 5, 2014, plaintiff Shantell Tippins ("Shantell") was at a barbeque on Long Island, New York with family members.  Her son, Joshua Tippins ("Joshua") left the house around noon and went to an Independence Day barbeque across the street from the family home.

20.     When Joshua left the house, his uncle, Terrance Tippins ("Terrance") was the only individual in the home.

21.     In the early evening hours of July 5, 2014, an acquaintance of Terrance's arrived at the Tippins residence and subsequently fell asleep on the living room couch.

22.     At approximately 8:50 p.m. on July 5, 2014, Terrance was in the upstairs bathroom when he heard a loud knock on the front door and went downstairs to answer it.

23.     When Terrance opened the front door, he saw approximately ten to fifteen uniformed police officers on his property.

24.     The Defendants demanded entry into the Tippins residence.  The defendant police officers did not indicate possession of an arrest and/or search warrant.

25.     Terrance lawfully refused police entry into his home and shut the front door.

26.     Approximately ten minutes later, at or about 9 p.m., Shantell arrived home and saw multiple marked police cars and police vans on the street, and approximately fifteen uniformed police officers standing in her front yard.

27.     Shantell walked into her front yard and inquired as to the situation.

28.     A police officer told Shantell that they were responding to a 911 call about a male on the sidewalk in front of 109-30 143rd Street, the house next door to the Tippins residence, requiring medical attention.

29.     Shantell did not observe anyone requiring medical attention on the sidewalk when she arrived home.

30.     The police officer told Shantell that the individual was inside her house.

31.     Shantell then walked up the front steps, knocked on the front door and asked her brother Terrance to open the door.  Shantell did not have her house keys because she had previously given them to her son, Joshua Tippins.

32.     Terrance complied with his sister's request and opened the front door.

33.     When Terrance opened the door, he saw multiple police officers standing on the landing and steps behind Shantell.

34.     Terrance stood in the doorway as Shantell entered the house and walked into the living room.  Once again, defendants demanded entry into the house.  Terrance lawfully refused.

35.     The defendant police officers who were standing on the steps and landing outside the front door then reached across the threshold of the home, grabbed Terrance by his arms and legs, pulled him out of the door frame, and threw him down the front steps.

36.     Terrance landed face down on the concrete at the bottom of the steps.

37.     The defendant police officers physically restrained Terrance while he remained on the ground in front of his house, handcuffed him and continued to use unwarranted violent physical force on his neck and back while Terrance was handcuffed and face down on the concrete.

38.     At this point, Terrance was having difficulty breathing because a police officer was pressing his knee into Terrance's back, for no apparent reason.

39.     The defendant police officers never asked Terrance to give them his hands to be handcuffed nor did they indicate that he had committed a crime.

40.     After Terrance was forcibly pulled from his home, Shantell ran outside and saw her brother lying face down on the concrete at the bottom of the front steps. Shocked by what she

6

was witnessing, Shantell began expressing her feelings about what the police were doing to her brother, especially since Terrance had broken no law.

41.     Defendant police officers immediately rounded on Shantell and two uniformed John Doe police officers physically grabbed Shantell, immobilized her, and pulled her down the front steps.

42.     As the police officers were about to throw Shantell to the ground, members of the community who had witnessed these events loudly informed the police officers that Shantell was pregnant.  The defendant police officers stopped what they were about to do and, instead, physically moved Shantell away from the house and placed her on a nearby curb.

43.     As this was occurring, Shantell's son, Joshua, came home to see his uncle and pregnant mother being physically abused by defendants for no apparent reason.

44.     Fearing for his mother's safety, Joshua shouted that his mother was pregnant and verbally expressed his displeasure about the defendants' treatment of his mother.

45.     Joshua attempted to approach his mother but, before he could reach her, defendant police officers grabbed Joshua by his arms and shoulders and threw him to the ground.  Joshua landed face down on the concrete.

46.     Joshua was held to the ground by a police officer who had his knee pressed into Joshua's back.

47.     The John Doe police officers were yelling at Joshua and telling him to stop resisting arrest.  Joshua told the defendant police officers that his right arm was pinned underneath him and that he was trying to get it out but could not move.

48.     Joshua was immobilized on the ground for approximately five minutes before being lifted off of the ground and handcuffed.  He was placed in a marked police car and transported to the 103rd Precinct.

49.     Terrance was eventually put in a separate marked police car and transported to the 103rd Precinct.  At no point was Terrance told that he was under arrest or that the police officers had an arrest or search warrant, nor was he Mirandized.

50.     Terrance Tippins was arrested and, in a complaint sworn to by defendant DERLETH, charged with obstructing governmental administration, resisting arrest, and disorderly conduct.

51.     The criminal complaint filed against Terrance Tippins by defendant DERLETH alleged that Terrance blocked the doorway to prevent Derleth and "other officer" from gaining entry.

52.     Terrance Tippins did not block the doorway to prevent entry by Derleth and the other uniformed officers.  At no time did Derleth or any other police officer produce a search and/or arrest warrant.  As such, he lawfully denied the defendant police officers entry.

53.     The criminal complaint filed against Terrance Tippins further alleged that Terrance resisted arrest by flailing his arms, twisting his body, kicking his legs, and pushing Derleth, which was physically impossible due to Mr. Tippins being grabbed by officers, immediately thrown to the ground, physically restrained and handcuffed in one fluid action by the police officers involved.

54.     Terrance Tippins did not push or attempt to push Derleth or any of the police officers nor did the officers ask Terrance to give them his hands to be handcuffed.

55.     Plaintiff Terrance Tippins was imprisoned for approximately twenty hours prior to arraignment, where his case was adjourned in contemplation of dismissal for six months pursuant to New York Criminal Procedure Law § 170.55.

56.     Upon his release from custody, Terrance Tippins went to Queens Hospital where he was treated for a broken orbital bone and facial lacerations.  He was prescribed pain medication for two weeks and had to go back to the hospital for follow-up visits.

57.     On January 5, 2015, the criminal prosecution was terminated favorably to Terrance Tippins when the case was dismissed by a judge of the Criminal Court of the City of New York.

58.     The assault on Terrance Tippins by the defendant police officers was in excess of their authority as NYPD officers.  This assault was made without proper cause.

59.     Defendants' conduct caused Terrance Tippins to sustain physical pain and suffering, including a broken orbital bone, and psychological and emotional trauma.  Their actions constituted outrageous and reckless conduct, demonstrated a callous indifference to and willful disregard of Terrance Tippins' federal and state protected rights.

60.     Plaintiff Joshua Tippins was arrested and, in a complaint sworn to by Defendant Rafferty, charged with disorderly conduct.

61.     Plaintiff Joshua Tippins was imprisoned for approximately one hour before he was issued a Desk Appearance Ticket and released to his grandmother's custody.  He had to return to court on September 9, 2014.

62.     Upon information and belief, the criminal prosecution was terminated favorably to Joshua Tippins.

9

63.     The assault on Joshua Tippins by the defendant police officers was in excess of their authority as NYPD officers.  This assault was made without proper cause.

64.     Defendants' conduct caused Joshua Tippins to sustain physical pain and suffering and psychological and emotional trauma.  Their actions constituted outrageous and reckless conduct, demonstrated a callous indifference to and willful disregard of Joshua Tippins' federal and state protected rights.

65.     Plaintiff Shantell Tippins was detained and unlawfully imprisoned by defendant NYPD officers at her home.  Luckily, she was spared from further assault by the intervention of good Samaritans calling attention to her pregnancy. These traumatic events placed Shantell in fear for her pregnancy as she was experiencing severe pains in her lower abdomen after her interactions with the police. Shantell was transported to Jamaica Hospital by ambulance for treatment.

66.     The unlawful detention of Shantell Tippins by the defendant police officers was in excess of their authority as NYPD officers.  This unlawful detention was made without proper cause.

67.     Defendants' conduct caused Shantell Tippins to sustain physical pain and suffering and psychological and emotional trauma.  Their actions constituted outrageous and reckless conduct, and demonstrated a callous indifference to and willful disregard of Shantell Tippins' federal and state protected rights.

68.     The actions of the individual defendants' complained of herein were carried out intentionally, recklessly, and with malice and gross disregard for Plaintiffs' rights.

69.     At all relevant times described herein, the Defendants were engaged in a joint venture, assisting each other in performing the actions described herein and lending their physical presence, support, and authority of their offices to one another.

70.     Defendant CITY failed to train, supervise, re-train, or discipline its police officers, including the individually named defendants within.

71.     Defendant CITY employs a well-publicized policy whereby the City, through the NYPD, repeatedly and without cause detains and arrests citizens without the requisite and legally necessary levels of suspicion.  The CITY was deliberately indifferent to an obvious need for training and supervision of its officers.

## FIRST CLAIM FOR RELIEF

### Violation of Terrance Tippins' Fourth Amendment and Fourteenth Amendment Rights under 42 U.S.C. § 1983

72.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Defendants, who were acting in concert and within the scope of their authority, arrested and caused Plaintiff Terrance Tippins to be imprisoned without probable cause in violation of his right to be free of an unreasonable seizure under the Fourth Amendment to the Constitution of the United States, and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

74.     Plaintiff Terrence Tippins suffered injury as a result of the Defendants conduct.

## SECOND CLAIM FOR RELIEF

### Violation of Shantell Tippins' Fourth Amendment and Fourteenth Amendment Rights under 42 U.S.C. § 1983

75.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.     Defendants, who were acting in concert and within the scope of their authority, arrested and caused Plaintiff Shantell Tippins to be imprisoned without probable cause in violation of her right to be free of an unreasonable seizure under the Fourth Amendment to the Constitution of the United States, and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

77.     Plaintiff Shantell Tippins suffered injury as a result of Defendants' conduct.

## THIRD CLAIM FOR RELIEF

### Violation of Joshua Tippins' Fourth Amendment and Fourteenth Amendment Rights under 42 U.S.C. § 1983

78.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.     Defendants, who were acting in concert and within the scope of their authority, arrested and caused Plaintiff Joshua Tippins to be imprisoned without probable cause in violation of his right to be free of an unreasonable seizure under the Fourth Amendment to the Constitution of the United States, and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

80.     Plaintiff Joshua Tippins suffered injury as a result of Defendants' conduct.

## FOURTH CLAIM FOR RELIEF

### Violation of Terrance Tippins' Fourth Amendment Rights under 42 U.S.C. § 1983

81.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

82.      The use of excessive force by the Defendants, acting in concert, in grabbing, pulling, pushing, and forcibly restraining Plaintiff Terrance Tippins was an objectively unreasonable physical seizure of plaintiff in violation of his rights under the Fourth Amendment to the Constitution of the United States.

83.      Plaintiff Terrance Tippins suffered injuries as a result of Defendants' conduct.

## FIFTH CLAIM FOR RELIEF

### Violation of Shantell Tippins' Fourth Amendment Rights under 42 U.S.C. § 1983

84.      Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.      The use of excessive force by the Defendants, acting in concert, in grabbing, pulling, and restraining Plaintiff Shantell Tippins was an objectively unreasonable physical seizure of Plaintiff in violation of her rights under the Fourth Amendment to the Constitution of the United States.

86.      Plaintiff Shantell Tippins suffered injuries as a result of Defendants' conduct.

## SIXTH CLAIM FOR RELIEF

### Violation of Joshua Tippins' Fourth Amendment Rights under 42 U.S.C. § 1983

87.      Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

88.      The use of excessive force by the Defendants, acting in concert, in grabbing, pulling, pushing, and restraining Plaintiff Joshua Tippins was an objectively unreasonable physical seizure of plaintiff in violation of his rights under the Fourth Amendment to the Constitution of the United States.

89.      Plaintiff Joshua Tippins suffered injuries as a result of Defendants' conduct.

## SEVENTH CLAIM FOR RELIEF

### Supervisory Liability for Deprivation of Rights under 42 U.S.C. § 1983

90.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.     Defendant ORELLANA and other Supervisory JOHN DOE Defendants (the "Supervisory Defendants") personally caused Plaintiffs' constitutional injuries by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

92.     The Supervisory Defendants were personally involved in either ordering, or failing to take preventative and remedial measures to guard against Plaintiffs' constitutional deprivations.  The Supervisory Defendants knew, or in the exercise of due diligence, should have known that the actions taken against Plaintiffs by the named and unnamed individual police officer defendants was likely to occur.

93.     The failure of the individual Supervisor Defendants to train, supervise and/or discipline the named and unnamed individual defendants with respect to the constitutional rights of civilians amounted to deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to Plaintiffs set forth herein.

## EIGHTH CLAIM FOR RELIEF

### Failure to Intervene under 42 U.S.C. § 1983

94.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

95.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they

14

observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

96.     The Defendants were present during the above-described incident and witnessed the unlawful arrest of Plaintiffs Terrance Tippins and Joshua Tippins.

97.     Defendants' use of excessive force against Plaintiffs was obviously excessive and unjustified under the circumstances yet Defendants failed to take any action or make any effort to intervene, prevent, halt or protect Plaintiffs from the unlawful conduct described herein.

98.     As a result of the foregoing, Plaintiffs feared for their safety, and were humiliated and subjected to unjustified excessive force, physical abuse, and unconstitutional arrest.  Further, Plaintiff Terrance Tippins sustained severe and permanent physical injuries.

## NINTH CLAIM FOR RELIEF

### *Monell* Claim Against Defendant City under 42 U.S.C. § 1983

99.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

100.    At all relevant times herein, Defendant CITY, acting through its agency, the NYPD, developed, implemented, enforced, encouraged and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to Plaintiffs' constitutional rights.

101.    All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies, customs, and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

102.    Defendant CITY and the NYPD, by their policy-making agents, servants, and employees, authorized, sanctioned and/or ratified the individual Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

103.    The unconstitutional acts complained of herein were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

104.    The aforementioned customs, practices, procedures, and rules of the CITY and the NYPD include, but are not limited to the following unconstitutional practices: (a) arresting persons known to be innocent, or without probable cause or legal authority; (b) use of excessive force on individuals, including, but not limited to, individuals who have already been handcuffed or otherwise restrained or compliant; (c) engaging in systemic and ubiquitous perjury, both oral and written, to cover up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors, or subordinates; (d) failing to supervise, train, instruct, or discipline police officers and encouraging misconduct; (e) discouraging police officers from reporting the corrupt or unlawful acts of other police officers and encouraging a code of silence wherein police officers refuse to report other officers' misconduct or tell false or incomplete stores, *inter alia*, in sworn testimony, official reports, statements to the Civilian Complaint Review Board ("CCRB"), and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover up and/or falsely exonerate accused police officers; and; (g) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

105.     At the time of the aforementioned constitutional violations, the CITY and the NYPD were and had been on notice of such unconstitutional conduct, customs, and *de facto* policies, such that the failure of the defendant CITY and the NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact.  In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part *infra*, the need for more effective supervision and other remedial measures was patently obvious.  However, the CITY and the NYPD made no meaningful attempt to prevent future constitutional violations.

106.     The existence of aforesaid unconstitutional customs and polices may be inferred from repeated occurrences of similar wrongful conduct, as documented by recent civil rights actions filed against the CITY and parallel prosecutions of NYPD police officers:

a.  Long v. City of New York, 09-CV-6099 (AJK) (S.D.N.Y.) (officer who purposefully swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force);

b.  McNamara v. City of New York, 04-CV-9216 (RJS) (JCF) (S.D.N.Y.) (evidence of perjured sworn statements systematically provided by officers to attempt to cover-up or justify unlawful mass arrests of approximately 1800 people during the 2004 Republican National Convention);

c.  Thompson v. City of New York, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, police officer use an expandable metal baton to beat plaintiff and also spray Mace in his face without cause);

d.  Ashe v. City of New York, 09-CV9696 (GBD) (THK) (S.D.N.Y.) (police officers beat and use Mace upon arrestees even though they were already handcuffed and compliant);

e.  McMillan v. City of New York, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

f.  Avent v. City of New York, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same);

g. Smith v. City of New York, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same);

h. Williams v. City of New York, 06-CV-6601 (NGG) (E.D.N.Y.) (officers arrest plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on the premises);

i. Colon v. City of New York, 09-CV-0008 (JBW) (E.D.N.Y.): In an Order dated November 29, 2009 denying the City's motion to dismiss on Iqbal/Twombly grounds, wherein the police officers at issue were prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing…serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

107. The existence of the aforesaid unconstitutional customs and practices, specifically with respect to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct, and exhibiting deliberate indifference towards the constitutional rights of persons with whom officers come into contact are further evidenced, *inter alia*, by the following:

a. In response to the Honorable Judge Weinstein's ruling in Colon v. City of New York, *supra*, in which he noted a "widespread…custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, the NYPD Commissioner acknowledged, "[w]hen it happens, it's not for personal gain. It's more for convenience."[1]

b. With respect to Fourth Amendment violations, in Ligon v. City of New York, 2013 WL 628534 (Feb. 14, 2013), Judge Scheindlin found that plaintiffs challenging allegedly unconstitutional policies and practices of the NYPD had shown "a clear

---

[1] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, available at:
http://www.nydailynews.com/news/ny_crime/2009/12/02/2009_kelly_shruggs_off_judge_who_rips_lying_cops.html.

likelihood of proving deliberate indifference under any of the prevailing ways of framing that standard," including failure to train and constructive acquiescence. Judge Scheindlin specifically rejected the NYPD's argument the broad, general remedial measures taken in 2012 was meaning action rebutting a finding of deliberate indifference.

108.    The existence of the above-described unlawful *de facto* policies and/or widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the CITY and the NYPD.

109.    Despite knowledge of such unlawful *de facto* policies, practices and/or customs, the supervisory and policy-making officers and officials of the NYPD and defendant CITY have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train, screen, and/or hire police officers who dutifully adhere to constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of individuals in the City of New York.

110.    The Defendant CITY knew or should have known that the acts alleged herein would deprive Plaintiffs' of their rights, in violation of the Constitutional rights protected under Federal and State law.

111.    Upon information and belief, the Individual Defendant police officers herein were the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to Defendant CITY and its agency, the NYPD, that the Individual Defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the Plaintiffs herein.

112.    Additionally, the CITY and its agency, the NYPD, knew or should have known of the Individual Defendants propensity to engage in misconduct of the type alleged herein.  Upon information and belief, prior to July 5, 2014, the defendant CITY was aware of numerous claims of constitutional violations involving Defendants DERLETH, WEBBER, and RAFFERTY, as documented in the following civil rights actions filed against the CITY:

a.    Vassall v. City of New York, 15-CV-3612 (MKB) (CLP) (E.D.N.Y.) (alleging five police officers from the 103rd Precinct, including Defendant RAFFERTY, entered plaintiff's home, without permission or legal authority, pulled plaintiff to the floor where they continued grabbing, kneeing, kicking and groping plaintiff before dragging her outside and transporting her to the precinct where she remained for over 12 hours);

b.    Clark v. City of New York, 14-CV-05044 (WFK) (RLM) (E.D.N.Y.) (alleging officers from the 103rd Precinct, including Defendant DERLETH, used excessive and unjustified force and unlawfully arrested plaintiff);

c.    Raghubardayal v. City of New York, 14-CV-7028 (ILG) (JO) (E.D.N.Y.) (alleging excessive force and false arrest after nine officers from the 103rd Precinct, including Defendant WEBBER, unlawfully entered plaintiffs' residence claiming they were responding to a 911 call);

d.    Tursi, et al. v. City of New York, 12-CV-2267 (SJ) (VMS) (E.D.N.Y.) (alleging defendant WEBBER intentionally and willfully subjected plaintiffs to false arrest, excessive force, malicious prosecution, assault and battery);

e.    Bustamante v. City of New York, 12-CV-1598 (SJ) (VMS) (E.D.N.Y.) (alleging that WEBBER directed other officers to unlawfully arrest and use excessive force on plaintiff, used racial slurs, fabricated false charges against plaintiff who was then charged with attempted robbery; the Nassau County Grand Jury failed to indict plaintiff and the case was dismissed with prejudice);

f.    Aviah v. City of New York, 11-CV-1303 (FB) (RML) (E.D.N.Y.) (alleging officers, including defendant WEBBER, unconstitutionally and without legal basis arrested and unlawfully used excessive force against the plaintiff, despite knowing there was no justification for an arrest or use of force);

113.    Despite knowledge of such incidents of prior misconduct, the CITY failed to take remedial action.

114.    The aforementioned CITY policies, practices, and/or customs of failing to supervise, train, hire, screen and/or instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.  Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, Defendants felt empowered to unlawfully seize Plaintiff Terrance Tippins from the sanctity of his home, without probable cause or legal authority, and to unlawfully arrest and physically abuse Plaintiffs Terrance Tippins and Joshua Tippins, without probable cause and then fabricate a swear to a false story to cover up their blatant violations of Plaintiffs' constitutional rights.  Pursuant to the aforementioned CITY policies, practices and/or customs, the officers failed to intervene in or report Defendants' violations of Plaintiffs' rights.

115.    Plaintiffs' injuries were a direct and proximate result of the Defendant CITY and its agency, the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices, and of the knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train, and discipline their police officers.

116.    Defendant CITY is directly liable and responsible for the acts of the Individual Defendants because the CITY repeatedly and knowingly failed to properly supervise, train, inspect, instruct, and discipline them, and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the United States and the State of New York.

117.    As a result of the foregoing, Plaintiffs feared for their safety, were deprived of their liberty, subjected to unjustified excessive force, physical abuse, and unlawful arrest. Plaintiffs sustained physical, psychological and emotional injury, humiliation, costs and expenses and suffered damages and injuries.

## TENTH CLAIM FOR RELIEF

### Assault of Terrance Tippins

118.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

119.    Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted plaintiff Terrance Tippins in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact, and intentionally engaged in a violent and/or overt menacing act, which threatened such contact to the plaintiff, and that such acts caused reasonable apprehension of such contact in the plaintiff.

120.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD.  The City of New York and the NYPD are responsible for the conduct of the individual defendant police officers.

121.    Plaintiff Terrance Tippins suffered injury as a result of Defendants' conduct.

122.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## ELEVENTH CLAIM FOR RELIEF

### Assault of Shantell Tippins

123.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124.    Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted plaintiff Shantell Tippins in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact, and intentionally engaged in a violent

and/or overt menacing act, which threatened such contact to the plaintiff, and that such acts caused reasonable apprehension of such contact in the plaintiff.

125.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD.  The City of New York and the NYPD are responsible for the conduct of the individual defendant police officers.

126.    Plaintiff Shantell Tippins suffered injury as a result of Defendants' conduct.

127.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWELFTH CLAIM FOR RELIEF

### Assault of Joshua Tippins

128.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.    Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted plaintiff Joshua Tippins in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact, and intentionally engaged in a violent and/or overt menacing act, which threatened such contact to the plaintiff, and that such acts caused reasonable apprehension of such contact in the plaintiff.

130.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD.  The City of New York and the NYPD are responsible for the conduct of the individual defendant police officers.

131.    Plaintiff Joshua Tippins suffered injury as a result of Defendants' conduct.

132.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## THIRTEENTH CLAIM FOR RELIEF

### Battery of Terrance Tippins

133.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

134.    Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered plaintiff Terrence Tippins when they, in a hostile and/or offensive manner unlawfully pulled plaintiff Terrence Tippins from his home, pushed him and threw him to the ground, without his consent and with the intention of causing harmful and/or offensive bodily contact to the plaintiff and caused such battery.

135.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD, which are therefore responsible for their conduct.

136.    Plaintiff Terrance Tippins suffered injury as a result of Defendants' conduct.

137.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FOURTEENTH CLAIM FOR RELIEF

### Battery of Joshua Tippins

138.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

139.    Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered plaintiff Joshua Tippins when they, in a hostile and/or offensive manner grabbed, pushed and threw plaintiff to the ground, without his consent and with the intention of causing harmful and/or offensive bodily contact to the plaintiff and caused such battery.

24

140.     Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD, which are therefore responsible for their conduct.

141.     Plaintiff Joshua Tippins suffered injury as a result of Defendants' conduct.

142.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FIFTEENTH CLAIM FOR RELIEF

### False Arrest and False Imprisonment of Terrance Tippins

143.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

144.     The acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws of the State of New York.  Defendants intended to confine plaintiff Terrance Tippins and, in fact, confined plaintiff, and plaintiff Terrance Tippins was conscious of the confinement.  Moreover, plaintiff Terrance Tippins did not consent to the confinement and the confinement was not otherwise privileged.

145.     The Individual Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD, which are therefore responsible for their conduct.

146.     Plaintiff Terrance Tippins suffered injuries as a result of defendants' conduct.

147.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SIXTEENTH CLAIM FOR RELIEF

### False Arrest and False Imprisonment of Shantell Tippins

148.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

149.    The acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws of the State of New York.  Defendants intended to confine plaintiff Shantell Tippins and, in fact, confined plaintiff, and plaintiff Shantell Tippins was conscious of the confinement.  Moreover, plaintiff Shantell Tippins did not consent to the confinement and the confinement was not otherwise privileged.

150.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD, which are therefore responsible for their conduct.

151.    Plaintiff Shantell Tippins suffered injuries as a result of defendants' conduct.

152.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SEVENTEENTH CLAIM FOR RELIEF

### False Arrest and False Imprisonment of Joshua Tippins

153.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

154.    The acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws of the State of New York.  Defendants intended to confine plaintiff Joshua Tippins and, in fact, confined plaintiff, and plaintiff Joshua Tippins was conscious of the confinement.  Moreover, plaintiff Joshua Tippins did not consent to the confinement and the confinement was not otherwise privileged.

155.    Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD, which are therefore responsible for their conduct.

156.    Plaintiff Joshua Tippins suffered injuries as a result of defendants' conduct.

157.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

### EIGHTEENTH CLAIM FOR RELIEF

### Malicious Prosecution of Terrance Tippins

158.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

159.    The acts and conduct of the Defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the Constitution of the United States.  Defendants commenced and continued a criminal proceeding against plaintiff Terrance Tippins.  Defendants acted with actual malice in commencing and continuing the proceeding and there was an absence of probable cause for the criminal proceeding. Furthermore, the criminal proceeding was terminated favorably to plaintiff Terrance Tippins.

160.    Plaintiff Terrance Tippins suffered injury as a result of defendants' conduct.

161.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.  Pursuant to the Fourth Amendment of the United States Constitution, this Court has jurisdiction to hear the federally based claim.

### NINETEENTH CLAIM FOR RELIEF

### Malicious Prosecution of Joshua Tippins

162.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

163.     The acts and conduct of the Defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the Constitution of the United States.  Defendants commenced and continued a criminal proceeding against plaintiff Joshua Tippins.  Defendants acted with actual malice in commencing and continuing the proceeding and there was an absence of probable cause for the criminal proceeding. Furthermore, upon information and belief, the criminal proceeding was terminated favorably to plaintiff Joshua Tippins.

164.     Plaintiff Joshua Tippins suffered injury as a result of defendants' conduct.

165.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.  Pursuant to the Fourth Amendment of the United States Constitution, this Court has jurisdiction to hear the federally based claim.

## TWENTIETH CLAIM FOR RELIEF

### Negligent Hiring, Retention, Training and Supervision – Plaintiff Terrance Tippins

166.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

167.     Defendant CITY and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise the Defendant police officers, individuals who were unfit for the performance of police duties on July 5, 2014, at the aforementioned location.

168.     Plaintiff Terrance Tippins suffered injuries as a result of the conduct of Defendant CITY.

28

169.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-FIRST CLAIM FOR RELIEF

### Negligent Hiring, Retention, Training and Supervision – Plaintiff Shantell Tippins

170.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

171.     Defendant CITY and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise the Defendant police officers, individuals who were unfit for the performance of police duties on July 5, 2014, at the aforementioned location.

172.     Plaintiff Shantell Tippins suffered injuries as a result of the conduct of Defendant CITY.

173.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-SECOND CLAIM FOR RELIEF

### Negligent Hiring, Retention, Training and Supervision – Plaintiff Joshua Tippins

174.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

175.     Defendant CITY and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise the Defendant police officers, individuals who were unfit for the performance of police duties on July 5, 2014, at the aforementioned location.

176.    Plaintiff Joshua Tippins suffered injuries as a result of the conduct of Defendant CITY.

177.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-THIRD CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress – Plaintiff Terrance Tippins

178.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

179.    Defendants' unlawful conduct was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

180.    Defendants' conduct was intended to and did cause severe emotional distress to Plaintiff Terrance Tippins.

181.    The conduct of the Defendant police officers was the direct and proximate cause of injury and damage to Plaintiff Terrance Tippins and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

182.    As a result of the foregoing, plaintiff Terrance Tippins was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damages and injured.

183.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress – Plaintiff Shantell Tippins

184.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

185.     Defendants' unlawful conduct was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

186.     Defendants' conduct was intended to and did cause severe emotional distress to Plaintiff Shantell Tippins.

187.     The conduct of the Defendant police officers was the direct and proximate cause of injury and damage to Plaintiff Shantell Tippins and violated her statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

188.     As a result of the foregoing, plaintiff Shantell Tippins was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

189.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-FIFTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress – Plaintiff Joshua Tippins

190.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

191.     Defendants' unlawful conduct was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

192.     Defendants' conduct was intended to and did cause severe emotional distress to Plaintiff Joshua Tippins.

193.     The conduct of the Defendant police officers was the direct and proximate cause of injury and damage to Plaintiff Joshua Tippins and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

194.     As a result of the foregoing, plaintiff Joshua Tippins was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

195.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

<u>**TWENTY-SIXTH CLAIM FOR RELIEF**</u>

<u>**Negligent Infliction of Emotional Distress – Plaintiff Terrance Tippins**</u>

196.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

197.     Defendants' conduct, in assaulting and battering Plaintiff Terrance Tippins, was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff Terrance Tippins.

198.     The acts and conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiff Terrance Tippins and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

199.     As a result of the foregoing, plaintiff Terrance Tippins was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

200.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-SEVENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress – Plaintiff Shantell Tippins

201.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

202.    Defendants' conduct, in assaulting Plaintiff Shantell Tippins, was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff Shantell Tippins.

203.    The acts and conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiff Shantell Tippins and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

204.    As a result of the foregoing, Plaintiff Shantell Tippins was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

205.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWENTY-EIGHTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress – Plaintiff Joshua Tippins

206.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

207.    Defendants' conduct, in assaulting and battering Plaintiff Joshua Tippins, was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff Joshua Tippins.

208.    The acts and conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiff Joshua Tippins and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

209.    As a result of the foregoing, Plaintiff Joshua Tippins was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

210.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## PUNITIVE DAMAGES AGAINST ALL INDIVIDUAL DEFENDANTS ARE WARRANTED AND APPROPRIATE

211.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

212.    The acts of the Individual Defendants were willful, wanton, malicious and oppressive, and were motivated solely by a desire to harm Plaintiffs, without regard for Plaintiffs' well-being, and were based on a lack of concern and ill-will towards Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs TERRANCE TIPPINS, SHANTELL TIPPINS, and JOSHUA TIPPINS pray for relief as follows:

A.    That the jury find and the Court adjudge and decree that Plaintiffs TERRANCE TIPPINS, SHANTELLE TIPPINS, and JOSHUA TIPPINS shall recover compensatory damages in an amount to be determined at trial against the individual defendants and the City of New York, jointly and severally, together with interests and costs, and punitive damages in an amount to be determined at trial against the individual defendants, jointly and severally.

34

B.      That the Plaintiffs recover the cost of this suit, including reasonable attorneys'

fees pursuant to 42 U.S.C. § 1988.

C.      That the Plaintiffs have such other and further relief as the Court shall deem just

and proper.


Dated:          June 3, 2016
                Hempstead, New York


                                        **BRILL LEGAL GROUP, P.C.**


                                        By: _____
                                            **Harleigh S. Tensen (HT7795)**
                                            64 Hilton Avenue
                                            Hempstead, NY 11550
                                            (516) 206-2002
                                             htensen@brill-legal.com

                                        *ATTORNEYS FOR PLAINTIFFS*